Jason T. Barbeau
Senior Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
(202) 616-8908 (telephone)
jason.barbeau@usdoj.gov

Attorney for Plaintiff, United States of America

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

_____
                                                     )
**UNITED STATES OF AMERICA,**          )
                                                     )
                          **Plaintiff,**             )
                                                     )
             v.                                      )          **Case No.**   3:24-cv-00237-SLG
                                                     )
**COREY POTTER,**                           )
**F/V KNOT EZ LLC, ALEUTIAN**      )
**TENDERING LLC, and ALASKA**      )
**TENDERING CO. LLC,**                   )
                                                     )
                          **Defendants.**         )
_____)

## COMPLAINT
## (Clean Water Act, 33 U.S.C. § 1321)

Plaintiff, the United States of America, by the authority of the Attorney General of

the United States, acting at the request of the United States Coast Guard, files this

Complaint and alleges the following:

**NATURE OF THE ACTION**

1.        This is a civil environmental enforcement action brought by the United States against Corey Potter and three of his related companies: F/V Knot EZ LLC, Aleutian Tendering LLC, and Alaska Tendering Company LLC ("Defendants"). The United States seeks penalties and injunctive relief for multiple violations of Section 311 of the Clean Water Act (CWA), 33 U.S.C. § 1321. The Complaint addresses Defendants' oily bilge discharges in June and July of 2022 from the commercial fish tender vessel *Knot EZ* into coastal waters of Alaska and related violations of the Coast Guard's pollution control regulations.

**JURISDICTION, AUTHORITY, AND VENUE**

2.        This Court has jurisdiction over this matter pursuant to Section 311(b)(7)(E), (e), and (n) of the CWA, 33 U.S.C. § 1321(b)(7)(E), (e), and (n), and 28 U.S.C. §§ 1331, 1345, and 1355.

3.        Authority to bring this action is vested in the United States Department of Justice by 28 U.S.C. §§ 516 and 519.

4.        Venue is proper in this District pursuant to Section 311(b)(7)(E), (e), and (n) of the CWA, 33 U.S.C. § 1321(b)(7)(E), (e), and (n), and 28 U.S.C. §§ 1391 and 1395(a), because the oil discharges and related violations occurred in Alaska, the vessel is based in Kodiak, and Defendants reside in, are located in, or do business in Alaska.

## DEFENDANTS

5.      Defendant Corey Potter is the founder and manager of F/V Knot EZ LLC. He resides in Kodiak, Alaska. He manages the company and the U.S.-flagged commercial fish tender vessel *Knot EZ* (O.N. 270361) in Alaska, among other vessels. The vessel *Knot EZ* is based in Kodiak. It is a wooden hulled vessel that was built in 1942, measures approximately 82 feet long, and is approximately 183 gross tons. Mr. Potter directs and manages the day-to-day operations of his companies and the vessel, including overseeing the handling and disposal of wastes, purchasing supplies and equipment, and scheduling voyages and maintenance work. He was an operator and person in charge of the *Knot EZ* at the time of the violations addressed in this Complaint.

6.      Defendant F/V Knot EZ LLC is a Vermont company formed in 2017 by Defendant Potter, who is the managing member. The company is involved in the commercial fishing or tendering business and is the registered owner of the *Knot EZ*. The company has owned the vessel since at least 2017, and it was the owner of the vessel at the time of the violations addressed in this Complaint.

7.      Defendant Aleutian Tendering LLC is an Alaska company formed in 2020 by Defendant Potter, who is the managing member. The company is involved in managing Defendant Potter's commercial fishing vessels and his fishing and tendering businesses, including the *Knot EZ*.

8.      Defendant Alaska Tendering Company LLC is a Vermont company formed in 2019 by Defendant Potter, who is the managing member. The company is involved in

managing Defendant Potter's commercial fishing vessels and his fishing and tendering businesses, including the *Knot EZ*.

## FACTS

9.      Defendants discharged oily bilge water from the engine room of the *Knot EZ* into Kodiak Harbor while anchored in the harbor on July 28 and 29, 2022.

10.     Defendants also discharged oily bilge water from the engine room of the *Knot EZ* into coastal Alaskan waters on a daily or near-daily basis between the vessel leaving Seward, Alaska, on June 15, 2022, and being removed from the ocean at Kodiak Harbor on July 30, 2022.

11.     Defendants brought the *Knot EZ* out of dry dock in Seward on June 14. Leaks through the hull into the engine room were apparent from the outset as were oil leaks from the engine room machinery.

12.      Defendants used a series of up to six or seven pumps to pump the engine room bilge overboard on a nearly continuous basis beginning on June 14 due to the excessive accumulation of fluids in the engine room.

13.     There was no oil filtering or wastewater treatment equipment in the engine room or on the overboard pumps, and all the oil and other wastes contained in the engine room bilge were pumped directly into the ocean.

14.     Despite the unseaworthiness of the vessel, Defendants directed the *Knot EZ* to Kodiak Island to use the vessel for their commercial business activities at Kodiak and

around the Alaska Peninsula in the northern Gulf of Alaska and the southeastern portion of the Bering Sea.

15.     Defendants deployed the vessel to numerous destinations along coastal Alaska between June 15 and July 28, including Naknek, Ugashik, Sand Point, and Kodiak. Throughout this time, the vessel continued to experience significant seawater leakage through the hull and oil leaks from the engine room machinery. The crew experienced the loss of electrical power and the loss of one or both engines on several instances.

16.     Rather than suspend operations to properly repair the vessel, Defendants continued to have oily bilge waste pumped overboard on a daily or near-daily basis during this time period.

17.     On or about July 28, 2022, the vessel returned to Kodiak Island and was anchored in Kodiak Harbor. Bilge pumps were being operated around the clock in the engine room.

18.     In the early morning hours of July 29, 2022, the vessel lost electrical power again, the bilge pumps shut down, a significant amount of seawater continued to leak through the hull into the engine room, and the vessel began to sink.

19.     At approximately 5:15 a.m., the master of the vessel radioed a distress call.

20.     The Kodiak Harbor Master was the first to arrive at the scene at approximately 5:30 a.m. He provided three portable pumps with attached hoses to aid the vessel and crew, which temporarily prevented the vessel from sinking.

Page 5 of 18

21.     The Coast Guard responded to the incident along with a Kodiak Police officer and an Alaska State Wildlife trooper the same morning.

22.     A Coast Guard investigator boarded the *Knot EZ* as part of the response. Oil was visible on the surface of the ocean and was coming from the vessel.

23.     During the boarding, the Coast Guard investigator observed seawater leaking into the engine room through the hull in several places. The investigator observed oil in the engine room bilge and fresh oil stains on the bulkheads where the oily bilge water levels had risen to earlier that morning before the Harbor Master arrived with the extra pumps.

24.     Following the boarding, the Coast Guard command at Sector Anchorage issued Captain of the Port Order 06-2022 on July 29, 2022. The Coast Guard determined that the vessel was a "substantial threat to the safety of the waterway and the marine environment" and that the vessel was "not fit for service at sea." The Order required, among other things, the development of a proposal within 12 hours to resolve the threat to the waterway and the marine environment.

25.     Defendants did not comply with the Coast Guard Order.

26.     As a result, on July 30, 2022, the Coast Guard issued Amendment 1 to Captain of the Port Order 06-2022 and ordered, among other things, the vessel to be removed from the water within 12 hours.

27.     The Kodiak Harbor is the primary port on Kodiak Island. It is used to provide essential services to the population of the island. The oil discharge and partial

sinking of the *Knot EZ* in the harbor posed a substantial threat of shutting down the Port and harming people and the marine environment.

28. The vessel was removed from the water on July 30 for repair or salvage efforts in Kodiak.

29. As part of the investigation, the Coast Guard collected oil samples from the discharge end of the vessel's overboard bilge piping system that connects to the engine room bilge.

30. All the samples collected by the Coast Guard were sent to the Coast Guard's Marine Safety Laboratory for analysis.

31. The laboratory analytical results show that oil was present in each of the overboard bilge discharge pipes, indicating the piping system was used to pump oil from the engine room bilge into the ocean.

32. Defendants' crew members admitted to the Coast Guard investigator that pumps and the vessel's bilge piping system were used to pump the engine room bilge waste overboard on a daily basis.

33. During and following the boarding, the Coast Guard investigator identified multiple operational defects and other violations of pollution control regulations on the vessel, including irregularities and deficiencies in the bilge piping system, operating with insufficient capacity to retain the engine room bilge accumulation, and the excessively leaking hull.

34.     The Coast Guard discovered similar operational problems on the *Knot EZ* under Defendant Potter's management in July 2017, including significant leaking through the hull and overboard oily bilge discharges into Prince William Sound.

35.     In addition, between August 2017 and June 2022, the Coast Guard investigated and documented oil discharges from the *Knot EZ* under Defendant Potter's management on two other occasions.

36.     In June 2021, the Coast Guard again identified to Defendants the excessive leaking of seawater through the hull of the *Knot EZ*.

37.     Defendant Potter continues to operate other vessels in coastal Alaskan waters. Through a series of companies he founded, he has managed and operated a number of other commercial fishing vessels, such as the *Ambition*, the *Guardian Angel*, the *Gambler*, and the *Arctic Dawn*.

38.     The *Ambition* sank at sea during a fish tendering voyage in July 2016 due to failure of the hull and swamping, when the pumps were unable to keep up with the rate of seawater entering through the hull. This incident resulted in a total loss of the vessel and cargo of over 170,000 pounds of fresh-caught salmon, the crew being forced to abandon ship into the Bering Sea where they were rescued by a good Samaritan vessel, and an oil discharge into the sea near Cold Bay, Alaska.

39.     The *Guardian Angel* and its crew were rescued at sea in October 2019 after both engines failed due to lack of proper maintenance, including the port engine's rudder falling off. The vessel has had recurring operational and maintenance problems, including

the swamping of the engine room and loss of electrical power while in the Gulf of Alaska in January 2024 due to leaving the engine room door open in heavy seas.

40.    The *Gambler* was the subject of a Coast Guard search-and-rescue operation in January 2022 due to the vessel icing over and listing at sea, was the source of a fuel oil discharge into Akutan Harbor in March 2022, and in March 2024 ran aground when approaching Seattle, Washington.

41.    The *Arctic Dawn* has been the documented source of several small oil discharges into the ocean and a grounding between February 2015 and March 2024.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Civil Penalties for Violation of CWA Section 311(b)(3)**
**33 U.S.C. § 1321(b)(3) – Oil Discharges**

42.    The preceding paragraphs are incorporated herein.

43.    Defendants discharged oily bilge water from the *Knot EZ* while anchored in Kodiak Harbor on July 28 and 29, 2022.

44.    Defendants discharged oily bilge water from the *Knot EZ* into the ocean on a daily or near-daily basis during the vessel's voyages in Alaskan coastal waters from at least June 15 to July 30, 2022.

45.    Section 311(b)(3) of the CWA prohibits the discharge of oil or hazardous substances into or upon, among other things, the "navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone . . . or which may

affect natural resources belonging to, appertaining to, or under the exclusive management authority of the United States (including resources under the Magnuson-Stevens Fishery Conservation and Management Act) in such quantities as may be harmful . . . ." 33 U.S.C. § 1321(b)(3).

46.     Pursuant to Section 311(b)(7)(A) of the CWA, "[a]ny person who is the owner, operator, or person in charge of any vessel . . . from which oil . . . is discharged in violation of paragraph (3), shall be subject to a civil penalty . . . ."  33 U.S.C. § 1321(b)(7)(A).

47.     Civil penalties will be increased pursuant to Section 311(b)(7)(D) of the CWA if the violation results from "gross negligence or willful misconduct." 33 U.S.C. § 1321(b)(7)(D).

48.     Defendants are each a "person" within the meaning of Section 311(a)(7) of the CWA. 33 U.S.C. § 1321(a)(7).

49.     The *Knot EZ* is a "vessel" within the meaning of Section 311(a)(3) of the CWA. 33 U.S.C. § 1321(a)(3).

50.     Defendants are the owner or operators and persons in charge of the vessel from which oil was discharged within the meaning of Section 311(a)(6) of the CWA. 33 U.S.C. § 1321(a)(6).

51.     Each release of oily bilge water from the vessel from at least June 15 to July 30, 2022, constitutes a "discharge" of oil within the meaning of Section 311(a)(2) of the CWA. 33 U.S.C. § 1321(a)(2). For the purposes of Section 311(a)(2) of the CWA,

"discharge" is defined to include "any spilling, leaking, pumping, pouring, emitting, emptying or dumping . . . ," subject to certain specified exceptions not applicable here. 33 U.S.C. § 1321(a)(2).

52.     The discharges were of "oil" within the meaning of Section 311(a)(1) of the CWA. 33 U.S.C. § 1321(a)(1).

53.     The discharges of oil were into or upon the navigable waters of the United States, adjoining shorelines, or the waters of the contiguous zone or may affect natural resources belonging to, appertaining to, or under the exclusive management authority of the United States within the meaning of Section 311(b)(3) of the CWA. 33 U.S.C. § 1321(b)(3).

54.     The oil discharges caused a visible film or sheen on the surface of the water and was in a quantity "as may be harmful" within the meaning of Section 311(b)(3) and (4) of the CWA, 33 U.S.C. § 1321(b)(3)-(4), and 40 C.F.R. § 110.3. Congress directed the President to determine by regulation "those quantities of oil and any hazardous substance the discharge of which may be harmful to public health or welfare or the environment of the United States." 33 U.S.C. § 1321(b)(4). The President delegated authority to the Administrator of the Environmental Protection Agency under CWA § 311(b)(3) and (b)(4) for determining quantities of oil the discharge of which may be harmful. Exec. Order No. 12777, Section 8(a), 56 Fed. Reg. 54757, 54768 (1991). The EPA determined that discharges of oil that "violate applicable water quality standards, or cause a film or sheen upon or discoloration of the surface of the water or adjoining

shorelines, or cause a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines" are, for purposes of Section 311(b)(4) of the CWA, discharges of oil in such quantities that may be harmful to the public health or welfare or the environment of the United States. 40 C.F.R. § 110.3.

55.     Defendants discharged oil from the *Knot EZ* in violation of Section 311(b)(3) of the CWA. 33 U.S.C. § 1321(b)(3).

56.     The oil discharges resulted from Defendants' willful misconduct or gross negligence in the maintenance and operation of the vessel.

57.     Defendants Potter, Aleutian Tendering LLC, and Alaska Tendering Company are each liable for civil penalties of up to $57,617 per day for each violation or $2,304 per barrel discharged under CWA Section 311(b)(7)(A), or under Section 311(b)(7)(D) if it is proved that the violations are the result of gross negligence or willful misconduct, a minimum of $230,464 per violation and up to $6,913 per barrel discharged. 33 U.S.C. § 1321(b)(7). *See also* 40 C.F.R. § 19.4 (listing the inflation-adjusted penalty rates for violations occurring after November 2, 2015).

## SECOND CAUSE OF ACTION

### Civil Penalties for Regulatory Violations under CWA Section 311(b)(7)(C) 33 U.S.C. § 1321(b)(7)(C) – Failure to Have Capacity to Retain Oily Wastewater

58.     The preceding paragraphs are incorporated herein.

59.     Any person who fails or refuses to comply with any regulation issued under Section 311(j) of the CWA, 33 U.S.C. § 1321(j), shall be subject to a civil penalty of up

to $57,617 per day for each violation pursuant to Section 311(b)(7)(C). 33 U.S.C. § 1321(b)(7)(C); *see also* 40 C.F.R. § 19.4.

60.     The Coast Guard has promulgated pollution control regulations under the authority of Section 311(j) of the CWA, including 33 C.F.R. § 155.350. Pursuant to 33 C.F.R. § 155.350, no person may operate an oceangoing vessel less than 400 gross tons unless the vessel: (1) "[h]as the capacity to retain on board all oily mixtures and is equipped to discharge these oily mixtures to a reception facility;" or (2) "[h]as approved oily-water separating equipment" on board to remove oil from the bilge water prior to discharging overboard.

61.     The *Knot EZ* is less than 400 gross tons and does not have oily-water separating equipment on board.

62.     Based on the Coast Guard's inspection of the vessel's equipment and the crew admitting to regularly discharging the bilge waste overboard, Defendants operated the *Knot EZ* between at least June 15, 2022, and July 29, 2022, without the capacity to retain on board the oily mixtures generated during voyages.

63.     Defendants are each liable for civil penalties of up to $57,617 per day for each violation under Section 311(b)(7)(C) of the CWA.

**THIRD CAUSE OF ACTION**

**Civil Penalties for Regulatory Violations under CWA Section 311(b)(7)(C)**
**33 U.S.C. § 1321(b)(7)(C) – Failure to Comply with Oily Mixture**
**Discharge Equipment Requirement**

64.     The preceding paragraphs are incorporated herein.

65.     Any person who fails or refuses to comply with any regulation issued under Section 311(j) of the CWA, 33 U.S.C. § 1321(j), shall be subject to a civil penalty of up to $57,617 per day for each violation pursuant to Section 311(b)(7)(C). 33 U.S.C. § 1321(b)(7)(C); *see also* 40 C.F.R. § 19.4.

66.     The Coast Guard has promulgated pollution control regulations under the authority of Section 311(j) of the CWA, including 33 C.F.R. § 155.420. Pursuant to this regulation, no person may operate an oceangoing vessel that is fitted with main or auxiliary machinery spaces and is of 100 tons and above but less than 400 tons unless, among other things, "[t]he ship has at least one pump installed to discharge oily mixtures through a fixed piping system to a reception facility" or the ship is equipped with oily-water separating equipment.

67.     The *Knot EZ*'s engine room is a main machinery space, the vessel is 183 gross tons, and the vessel does not have an oily-water separating system on board.

68.     Defendants operated the *Knot EZ* between at least June 15, 2022, and July 30, 2022, without a fixed piping system to discharge oily mixtures to a reception facility in violation of the regulation.

69.     Based on information and belief, and subject to the opportunity for additional discovery in this case, Defendants throughout their 2022 working season— June 15 to July 30—never transferred oily bilge water from the *Knot EZ* to any reception facility for proper disposal.

70.     Defendants are each liable for civil penalties of up to $57,617 per day for each violation under Section 311(b)(7)(C) of the CWA.

## FOURTH CAUSE OF ACTION

### Injunctive Relief under CWA Section 311(e), 33 U.S.C. § 1321(e)

71.     The preceding paragraphs are incorporated herein.

72.     In addition to civil penalties for the violations identified above, the United States seeks injunctive relief from Defendants to prevent future discharges of oil and other related CWA violations. Section 311(e) of the CWA authorizes the Coast Guard to act when it determines there "may be an imminent and substantial threat[s] to the public health or welfare of the United States . . . because of an actual or threatened discharge of oil or a hazardous substance from a vessel or facility in violation of subsection (b)." 33 U.S.C. § 1321(e).

73.     Section 311(e)(1)(A) of the CWA authorizes the Attorney General to secure "any relief from any person . . . as may be necessary to abate such endangerment." 33 U.S.C. § 1321(e)(1)(A). This Court has "jurisdiction to grant any relief under this subsection that the public interest and the equities of the case may require." 33 U.S.C. § 1321(e)(2). Injunctive relief is also sought pursuant to the Court's inherent equitable authority.

74.     Defendants are each a "person" within the meaning of Section 311(e) of the CWA.

75.     Discharges of oil into Alaskan ports and the ocean by Defendants from their vessels' engine rooms may pose imminent and substantial threats to natural resources and to the public health or welfare. Defendants' operational practices— operating poorly maintained vessels, routinely discharging oily waste overboard, and failing to transfer oily bilge water to shoreside reception facilities for proper treatment and disposal—as well as their history of vessel sinkings and near sinkings, as described in this Complaint, may pose imminent and substantial threats to public health or welfare and the environment of the United States, including the crews of the vessels owned and operated by Defendants. Such threats are likely to continue unless corrective measures are imposed by the Court.

### REQUEST FOR RELIEF

WHEREFORE, The United States respectfully requests that this Court:

A.     Find Defendants liable and assess civil penalties against Defendants Corey Potter, Aleutian Tendering LLC, and Alaska Tendering Company, separately and individually, for the oil discharge violations of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), in the amount of up to $57,617 per day for each violation under CWA Section 311(b)(7)(A) or, if it is proved that the violations are the result of gross negligence or willful misconduct, in the amount of at least $230,464 per discharge under Section 311(b)(7)(D);

B.     Find Defendants liable and assess civil penalties against each Defendant, separately and individually, of up to $57,617 per day for each violation of the Coast

Guard's pollution control regulations, as authorized under Section 311(b)(7)(C),

33 U.S.C. § 1321(b)(7)(C);

C.    Enjoin Defendants from continuing their harmful and illegal practices and

order them to perform other appropriate injunctive relief measures to prevent future oil

discharges or related Clean Water Act violations; and

D.    Award such other and further relief as the Court may deem just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


_____*s/ Jason T. Barbeau*_____
JASON T. BARBEAU
Senior Trial Attorney (D.C. Bar No. 468200)
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
(202) 616-8908 (telephone)
jason.barbeau@usdoj.gov

Of Counsel:

LT Griffin Deitz
United States Coast Guard
District 17 Legal
Juneau, AK

LT Lydia Teal
United States Coast Guard
Office of Claims and Litigation
Washington, DC